IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In the Matter of ) | |
| the Extradition of ) | Case No. 1:05m6 |
| ) | |
| EMIR ONUR CILEK. ) | |

O R D E R

This matter comes before the Court upon the Government's complaint seeking the extradition of Emir Onur Cilek to Turkey for the alleged kidnaping and rape of a 16-year-old girl. The accused is a Turkish citizen, as was the victim. The Court conducted an extradition hearing on Monday, January 31, 2005, and received additional written submissions thereafter. For the following reasons, the Court will issue a certificate of extraditability.

Factual Background

On the afternoon of Friday, July 25, 2003, Defendant Emir Onur Cilek allegedly raped the 16-year-old victim at his residence on Williams Island in Aventura, Florida. The victim, who knew Mr. Cilek, went to his residence under the impression that she was going to help him set up for a meeting of the Turkish American Youth Association to which they both belonged. Once she was inside his residence, Mr. Cilek allegedly began to kiss the victim against her will and, despite her repeatedly telling him to stop, forcibly removed her clothing, pushed her onto his bed, forced her arms and hands behind her back, and raped her. After waiting two days before telling anyone of the assault, she notified her parents on Sunday, July 27, 2003. On this date, she also notified the Aventura Police Department of the rape. She gave a

statement to police the following day stating that she had been forcibly raped by the Defendant in his residence. On July 29, she underwent an examination at the Rape Treatment Center at Jackson Memorial Hospital, during which Dr. Simmons documented recent bruising and a healing tear to her vaginal area and hymen. On July 31, the victim wrote a statement on her computer describing the alleged rape. Later that same day, she committed suicide in her parents' residence in Boca Raton, Florida. After a preliminary investigation by police, on July 31, Mr. Cilek was arrested and interviewed by Detective Cumbie. Mr. Cilek admitted to having "rough sex" with the victim, but claimed that it was a consensual sexual encounter.

According to a memorandum written by Assistant State Attorney Patrick Trese of the Office of the State Attorney for the 11th Judicial Circuit, at the time of the arrest of Mr. Cilek, there existed probable cause that a sexual battery had been committed upon the victim. However, after further review, the Office of the State Attorney decided not to pursue criminal charges because of evidentiary barriers due to the victim's suicide. The case was no-actioned on September 5, 2003. Turkey is now seeking extradition of Mr. Cilek in order to try him in Turkey.

Procedural Background

On January 3, 2005, the United States, by counsel Assistant United States Attorney Michael E. Rich, filed a Complaint under oath pursuant to 18 U.S.C. § 3184[1] on behalf

---

[1] 18 U.S.C. § 3184 provides as follows: "Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized to

2

of the government of the Republic of Turkey seeking the extradition of Emir Onur Cilek to the Republic of Turkey based upon the Extradition and Mutual Assistance in Criminal Matters Treaty between the United States and the Republic of Turkey of June 7, 1979, TIAS 9891. On October 7, 2004, the Embassy of Turkey submitted a diplomatic note formally requesting the extradition of Mr. Cilek. The documents submitted by the Embassy of Turkey were certified on September 20, 2004, by Eric S. Edelman, Ambassador of the United States Embassy in Ankara, in accordance with Title 18 U.S.C. 3190. On December 22, 2004, David O. Buckholz, Attorney Advisor in the Office of the Legal Advisor of the Department of State, executed a written declaration describing Turkey's extradition request and the applicable legal provisions, which was accompanied by the Department of State's Authentication of the Declaration. The documents described above were filed with the Complaint and marked collectively as Government's Exhibit #1. Mr. Cilek was arrested on January 10, 2005, at the request of the Government of Turkey, pursuant to the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and Turkey of June 7, 1979, TIAS 9891. On

---

do so by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge to the end that the evidence of criminality may be heard and considered....If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

January 14, 2005, Mr. Cilek was ordered detained pending the hearing before Magistrate Judge O'Grady on January 31, 2005.

Discussion

The judicial role in extradition proceedings is limited.  "Extradition is an executive, not a judicial, function.  The power to extradite derives from the President's power to conduct foreign affairs.  An extradition proceeding is not an ordinary proceeding.  Rather, the judiciary serves an independent review function delegated to it by the Executive and defined by statute." *In the Matter of the Extradition of Lior Atuar,* 300 F.Supp. 2d 418, 425 (S.D.W.Va. 2003)*,* quoting *Martin v. Warden, Atlanta Pen,* 993 F.2d 824, 828 (11th Cir. 1993)*.*

As determined by 18 U.S.C. 3184 and relevant case law, the Court should consider the following factors in order to determine whether extradition is proper: 1) Whether the judicial officer is authorized to conduct extradition proceedings; 2) Whether the court has jurisdiction over the relator; 3) Whether the applicable treaty is in full force and effect; 4) Whether the crime for which surrender is sought is covered by the terms of the treaty; and 5) Whether there is probable cause to believe that the crime for which relator's surrender was sought was committed and that relator participated in or committed it. *See In the Matter of the Extradition of Lior Atuar,* 300 F.Supp. 2d 418 (S.D.W.Va. 2003)*; Bingham v. Bradley,* 241 U.S. 511 (1916)*; McNamara v. Hensel,* 226 U.S. 520 (1913)*; Zanazanian v. United States,* 729 F.2d 624 (9th Cir. 1980).  Additional case law requires that there be criminal charges pending in the requesting state.  *United States v. Barr,* 619 F.Supp. 1068, 1070 (E.D.Pa. 1985).

Most of the requirements are clearly met and largely uncontested. First, the judicial officer in this case is authorized to conduct extradition proceedings. 18 U.S.C. 3184 establishes that "any magistrate judge authorized so to do by a court of the United States" may hear extradition cases. 18 U.S.C. 3184. The constitutionality of allowing magistrate judges to conduct extradition proceedings under 18 U.S.C. 3184 has been upheld. *Ward v. Rutherford,* 287 U.S. App. D.C. 246, 287 (rejecting constitutional challenge to magistrate's authority). Second, the Court has jurisdiction over the relator, as Mr. Cilek is before the Court. *See In re Pazienza,* 619 F.Supp. 611 (S.D.N.Y. 1985) (holding that if the accused is before the court, the court has personal jurisdiction). Third, the applicable treaty, the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and Turkey of June 7, 1979, TIAS 9891, is in full force and effect. This is confirmed by the Declaration of David O. Buckholz, Attorney Advisor in the Office of the Legal Advisor of the Department of State. Government's Exhibit #1.

Two additional requirements are that there are criminal charges pending in the requesting state and that the crimes for which surrender is sought are covered by the terms of the treaty. There are indeed criminal charges pending in the requesting state. Mr. Cilek has been indicted in Turkey for violations of Turkish Criminal Code Articles 416/1,[2] 418/1,[3] and 430/1.[4]

---

[2] Article 416/1 (Amended) provides: "Any person who rapes a person who completed fifteen years of age using force and violence or no threat...is punished by heavy imprisonment no less than seven years."

[3] Article 418/1 (Amended) provides: "In cases when the above mentioned actions and motions result with the death of the aggrieved the offender is punished with heavy life imprisonment."

[4] Article 430/1 (Amended) provides: "Any person kidnaps and seizes an immature person by using force and violence threat or fraudulent, with concupiscence [sic] or for marriage

Government Exhibit #2 includes the indictment for extradition in Turkey as certified by the U.S. Ambassador to Turkey. Under the relevant treaty, the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and Turkey of June 7, 1979, TIAS 9891, there is a "dual criminality" requirement wherein the accused may be extradited and tried only for actions that are crimes in both countries. This requirement is specified in Article 2(b) of the Treaty, which provides that extraditable offenses include "Offenses listed in the Appendix to this Treaty which are punishable under both the laws of the Requesting Party and the Requested Party for at least a period exceeding one year or by a more severe penalty." Treaty, Article 2, ¶ b. The Appendix to the Treaty lists as extraditable offenses kidnaping, abduction, false imprisonment, child-stealing, rape, and indecent assault. Treaty, Appendix, ¶ 5, 6. These extraditable offenses are clearly punishable under both the laws of the Requesting Party and the Requested Party for at least a period exceeding one year or by a more

---

purposes this person is punished...by heavy imprisonment from five years to fifteen years."

severe penalty, as is demonstrated by Florida Statutes § 787.01,[5] 794.011,[6] and 775.082,[7] and Articles 416/1 and 430/1 of the Turkish Criminal Code. According to the diplomatic note submitted by the Embassy of Turkey, the crimes for which extradition is requested by Turkey are "holding a teenager against her will and raping her by force." With regards to these crimes, the "dual criminality" requirement is fulfilled.

However, the Turkish courts have also indicted Mr. Cilek under Article 418/1 of the Turkish Criminal Code.  Article 418/1 provides that in cases where rape by force and violence "result with the death of the aggrieved the offender is punished with heavy life imprisonment." There is no counterpart for this law in the United States; therefore, the dual criminality requirement is not fulfilled and Mr. Cilek cannot be tried in Turkey under Article 418/1.  Defendant can, however, be tried in Turkey under Articles 416/1 and 430/1.

---

[5]Florida Statute § 787.01 provides: "(1)(a) The term "kidnaping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:...2. Commit or facilitate commission of any felony. 3. Inflict bodily harm upon or to terrorize the victim or another person....(2) A person who kidnaps a person is guilty of a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in §775.082...."

[6]Florida Statute § 794.011 provides: "(4) A person who commits sexual battery upon a person 12 years of age or older without that person's consent, under any of the following circumstances, commits a felony of the first degree, punishable as provided in §775.082...: (a) When the victim is physically helpless to resist. (b) When the offender coerces the victim to submit by threatening to use force or violence likely to cause serious personal injury on the victim, and the victim reasonably believes that the offender has the present ability to execute the threat. (c) When the offender coerces the victim to submit by threatening to retaliate against the victim, or any other person, and the victim reasonably believes that the offender has the ability to execute the threat in the future."

[7]Florida Statute § 775.082 provides: "(3) A person who has been convicted of any other designated felony may be punished as follows:...(b) For a felony of the first degree, by a term of imprisonment not exceeding 30 years or, when specifically provided by statute, by imprisonment for a term of years not exceeding life imprisonment."

As most of the requirements for extradition are indisputably met, the major source of debate concerns the requirement that there be probable cause to believe that the crime for which relator's surrender was sought was committed and that relator participated in or committed it. This Court finds that such probable cause exists.

The government has submitted numerous exhibits in order to establish probable cause in this case. Exhibit 5 is the sworn statement of the victim made to Aventura, Florida, Police Department Detective James A. Cumbie. Exhibit 6 is the Aventura Police Incident Report 07/20/2003 07:49, Case #01-03-004078. Exhibits 5 and 6 describe the details of the alleged rape and the circumstances surrounding it. According to these exhibits, on the afternoon of Friday, July 25, 2003, Defendant Emir Onur Cilek raped the 16-year-old victim at his residence, on Williams Island in Aventura, Florida. The victim, who knew Mr. Cilek, went to his residence under the impression that she was going to help him set up for a meeting of the Turkish American Youth Association to which they both belonged. Once she was inside his residence, Mr. Cilek allegedly began to kiss the victim against her will and, despite her repeatedly telling him to stop, forcibly removed her clothing, pushed her onto his bed, forced her arms and hands behind her back, and raped her.

Signs of the alleged rape are documented in Exhibit 7, the report from Jackson Memorial Hospital's Rape Treatment Center's examination of the victim. During the examination, which took place on July 29, 2003, Dr. Simmons documented recent bruising and a healing tear to her vaginal area and hymen.

Further details of the alleged rape and the victim's resulting emotional trauma are demonstrated by Exhibit 8, a document typed by the victim on her computer that was

downloaded from her computer and printed out after her suicide.  The document is a firsthand account of the alleged rape and her feelings of fear and depression resulting from the incident.  An excerpt reads, "Onur Cilek sad (sic) I am going to rape you in (Turkish) and I asked him why he says because your (sic) virgin and your (sic) Turk....Onur Cilek put a pillow to my face and he screamed to me look there is no way that you can get out...don't try to fight because nothing can stop me you have no chance."

Exhibit 9 is Detective Cumbie's Affidavit, dated December 23, 2004, which documents that "Suspect Cilek, during interview admitted...[that he] attempted to have vaginal intercourse with the juvenile victim N.K. for over half an hour and stated the victim told him it hurt when he attempted to penetrate her vagina with his penis."

Exhibit 10 is an Office of State Attorney, 11th Judicial Circuit, Interoffice Memorandum to File.  This noted that the case was no-actioned on September 5, 2003 because of evidentiary barriers due to the victim's suicide despite the assessment that at the time of the arrest of Mr. Cilek, there existed probable cause that a sexual battery had been committed upon the victim.  Based on this evidence, the Court finds that sufficient probable cause exists to reach the evidentiary standard required for extradition. Thus, all of the requirements for extradition are fulfilled.

However, Defense counsel has argued that the Court should decline to extradite Mr. Cilek to Turkey based on the possibility that he may be tortured by Turkish police or other prison authorities.  Citing a document from Human Rights Watch, Defendant's counsel described incidents of torture in Turkey and argued that it would be a violation of the International Covenant on Civil and Political Rights for the United States to extradite someone to

a country where he would face such conditions.

Defense counsel's argument fails, for it is not the role of this Court to investigate potential conditions the accused might face in Turkey.  Such responsibility is best left to the executive rather than the judicial branch as it is a matter concerning foreign affairs.  Generally, the "Rule of Non-Inquiry" prohibits judicial inquiry into the conditions and treatment which a relator might face upon extradition. *See In the Matter of the Extradition of Lior Atuar,* 300 F.Supp. 2d 418, 432 (S.D.W.Va. 2003). The Secretary of State, not the courts, has the role of determining whether extradition should be denied based on humanitarian grounds.  *See Ramiro Cornejo-Barreto v. W. H. Siefert,* 379 F.3d 1075,1084 (9th Cir. 2004).[8]

Similarly, Mr. Cilek argues that since the evidence was deemed insufficient to move forward with the prosecution in Florida, it should not be allowed to move forward in Turkey.  Mr. Cilek argues that the victim's statements are inadmissible hearsay, with the victim being unavailable for cross-examination.  The defendant's constitutional right to confront the victim cannot occur because the victim is deceased.

However, here again the Rule of Non-Inquiry applies and thus whether either of the statements made by the victim in this case would be admissible in a United States Court under the standard set by the Supreme Court in *Crawford v. Washington*, 124 S.Ct. 1354 (2004),

---

[8]*See also United States v. Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997)* ("The rule of non-inquiry, like extradition procedures generally, is shaped by concerns about institutional competence and by notions of separation of powers."); *Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir. 1990)* ("The interests of international comity are ill-served by requiring a foreign nation...to satisfy a United States District Judge concerning the fairness of its laws and the manner in which they are enforced."); *Escobedo v. United States, 623 F.2d 1098, 1107 (5th Cir. 1980)* ("[T]he degree of risk to [the accused's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch.").

is not for this Court to consider. Similarly, it is not for this Court to decide whether either of the written statements of the victim are sufficiently reliable under Turkish law to be admitted against the defendant. There is no evidence before this Court to suggest that the laws of Turkey do not provide the defendant with a fair opportunity to defend himself and, regardless of that, it is not the role of this Court in this extradition setting to analyze Turkish law.[9]

Therefore, defendant's argument that he should not be extradited to Turkey because the remaining evidence against him should not support a finding of probable cause nor a prosecution in another country is rejected.

As all of the requirements for Certification of Extraditability have been fulfilled, the Court will enter a Certification of Extraditability.

**CERTIFICATION OF EXTRADITABILITY**

For reasons stated in the Court's Memorandum Opinion filed herewith, the Court finds that Emir Onur Cilek is extraditable to the Republic of Turkey pursuant to the Extradition and Mutual Assistance in Criminal Matters Treaty between the United States of America and the Republic of Turkey. In accordance with 18 U.S.C. § 3184, it is hereby CERTIFIED, to the Secretary of State of the United States of America that the evidence against Emir Onur Cilek is sufficient to support a finding of probable cause that Mr. Cilek committed the offenses with

---

[9]*See, e.g., Ahmad,* 910 F.2d at 1067. *See also Holmes v. Laird*, 459 F.2d 1211, 1219 ("What we learn from *Neely* [*Neely v. Hensel*, 180 U.S. 109 (1901)] is that surrender of an American citizen by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguard in all respects equivalent to those constitutionally enjoined upon American trials.").

which he is charged in the Republic of Turkey and is extraditable under the aforesaid Treaty.

It is therefore hereby **ORDERED** pursuant to 18 U.S.C. § 3184 that a copy of this Certification of Extraditability, all evidence submitted to the Court on the issue of extradition, the transcript of the extradition hearing, and the Court's Memorandum Opinion filed herewith be **CERTIFIED** to the Secretary of State of the United States that a warrant may issue upon the requisition of the proper authorities of the Republic of Turkey for the surrender of Emir Onur Cilek, according to the stipulations of the Extradition and Mutual Assistance in Criminal Matters Treaty between the United States of America and the Republic of Turkey.

The Clerk is further directed to send a copy of this Certification of Extraditability to Relator Emir Onur Cilek, counsel of record, the United States Marshal Service, and the Office of Probation.

ENTERED this 13th day of April, 2005.

_____/s/_____
Liam O'Grady
United States Magistrate Judge

Alexandria, Virginia